Filed 2/18/25  P. v. Bowman CA4/2
*See Dissenting Opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083016 |
| v. | (Super.Ct.No. RIF090904) |
| NORMA MARIA BOWMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

1

At a hearing pursuant to Penal Code section 1172.75,[1] the court found defendant and appellant Norma Maria Bowman ineligible for a full resentencing hearing. On appeal, defendant contends this court should reverse the order and remand the matter to the trial court with directions to hold a full resentencing hearing. We affirm with directions.

## I. PROCEDURAL BACKGROUND

On December 21, 2000, a jury convicted defendant of first degree burglary. (§ 459, count 1.) The court thereafter found true allegations that defendant had suffered two prior serious felony convictions (§ 667, subd. (a)), nine prior strike convictions (§§ 667, subds. (c) & (e), 1170.12, subd. (c)), and four prior prison terms (§ 667.5, subd. (b)). (*People v. Bowman* (Oct. 3, 2001, E029174) [nonpub. opn.] (*Bowman*).)

The court sentenced defendant to an aggregate term of imprisonment of 35 years. The court imposed a 25-year term for the burglary offense and two, consecutive, five-year terms for the prior serious felony conviction enhancements. The court stayed punishment on the prior prison term enhancements. (*Bowman*, *supra*, E029174.)

Defendant appealed. This court affirmed the judgment. (*Bowman*, *supra*, E029174.)

On March 14, 2019, the California Department of Correction and Rehabilitation (CDCR) filed a letter indicating that the court's most recent abstract of judgment appeared to have invalidly reflected that the court imposed a five-year term on one of the

---

[1] All further statutory references are to the Penal Code.

prior prison term enhancements.[2] On March 20, 2019, the court issued a corrected abstract of judgment in which it appears to have stricken two of the prior prison terms and stayed imposition of punishment on the remaining two.

On December 28, 2023, at a hearing at which counsel represented defendant,[3] the court indicated that it had read and considered the decisions in *People v. Rhodius* (2023) 97 Cal.App.5th 38 (*Rhodius*), review granted February 21, 2024, S283169; *People v. Renteria* (2023) 96 Cal.App.5th 1276 (*Renteria*); *People v. Christianson* (2023) 97 Cal.App.5th 300 (*Christianson*), review granted February 21, 2024, S283189; and *People v. Saldana* (2023) 97 Cal.App.5th 1270 (*Saldana*), review granted March 12, 2024, S283547.

---

[2] The clerk does appear to have inserted a "5" instead of an "S" next to one of the priors.

[3] It is unclear from the record as originally filed how the matter initially came to the court's attention. "[S]ection 1172.75 does not authorize a defendant to seek resentencing on his or her own motion or petition. Rather the process is triggered by the Department of Corrections and Rehabilitation [the CDCR] identifying a defendant as a person serving a sentence that includes a prior prison term enhancement. [Citation.]" (*People v. Cota* (2023) 97 Cal.App.5th 318, 332; accord, *People v. Newell* (2023) 93 Cal.App.5th 265, 268; accord, *People v. Burgess* (2022) 86 Cal.App.5th 375, 382 [Lower and appellate courts lack jurisdiction over a request for section 1172.5 relief brought solely by a defendant].)
On March 13, 2024, defendant's appellate counsel filed a motion to augment the record with any document in which the CDCR identified defendant as a person eligible for section 1172.75 relief. We granted the request. The clerk of the superior court filed a certificate indicating that no such document could be located.
On November 27, 2024, we requested the parties file supplemental letter briefs addressing whether there was any documentary evidence to reflect whether the CDCR initiated the proceedings and, if not, whether this court had jurisdiction over the appeal. On December 5, 2024, the parties stipulated that the CDCR had identified defendant as a person eligible for section 1172.75 relief on a list provided to the court on November 30, 2023. We accept the stipulation.

The People requested the court "incorporate the argument in People v. Archuleta, RIF1605083." (Case No. E082960.) The court asked defense counsel whether he wished to "submit on the comments made in People v. Archuleta and the comments you personally made in People vs. Bonachea?" Defense counsel responded, "Bonachea was a different colleague of mine. But yes, I would like to incorporate those."

The court replied, "So at this time, the request to continue to find out what the Supreme Court will do if it recalls Rhodius and/or Christianson is denied for the reasons articulated by the Court in Bonachea. [¶] The request for relief is denied by the Court for the reasons articulated in the People vs. Archuleta."[4]

On December 27, 2023, in Archuleta, the same court as in this case, presided over another section 1172.75 hearing. Defense counsel argued that the statute permitted a full resentencing hearing for any person who was serving a term of judgment that included a stayed prior prison term enhancement.

The court asked, "How can they possibly be serving a term if the sentence is stayed?" Defense counsel answered, "It's serving a judgment that includes the

---

[4] Defendant's counsel observes, "[I]t is not possible to know the contents of the argument and rulings in those two cases." It is, in fact, possible to know the contents of the argument and rulings in those two cases. Counsel in other cases have moved to augment the record to include the reporters' transcripts from other cases, which had been incorporated as the rationale for the court's ruling; this court has granted such motions in the past. On our own motion, we augmented the record to include the reporter's transcript in Archuleta, case No. E082960. *People v. Bonachea* (Superior Court of Riverside County case No. BAF1801172) is irrelevant to the issue in this case because, as the court indicated, that court's reasoning was with respect to whether the court should continue the matter until the California Supreme Court resolves the split of authority. The court denied the request to do so; defendant's appellate counsel does not argue on appeal that this was error. Thus, that issue is not before us.

4

enhancement." "Those persons in their custody [are] currently serving a sentence for a judgment and a sentence based on an enhancement."

The court responded, the "true aim of that statute was always just [to] get rid of prison priors, which would fully . . . effectuate the goal of the legislature." "We're going to apply it to everybody who is currently serving a term for one of these. We're going to erase those. That was the aim of the statute. Period."

"As I've said before, were I to read it differently, folks who had their prison priors stricken prior to the operative date of this statute don't get relief even though they were originally sentenced to it." "[E]ven Christianson says the proper vehicle is to strike [the enhancements], not to stay [them]. So Christianson absolutely creates an equal protection problem."

"So here's my problem with Christianson. What if [the defendant's] court had stricken it instead of taking the plea and stayed it? What if they had stricken both . . . as they should have? You would say then he's just not entitled to relief?" Defense counsel responded, "I think with what the statute says, it would not fit within [section] 1172[.75] if his prison priors were stricken at the original sentencing."

The court found *Christianson* flawed for its proposition that a court could always subsequently impose a stayed prior prison term enhancement: "I find that analysis to be specious. And the reason I find it to be specious is that could only have happened prior to 2020 because as of 2020, you could not do that. As soon as the law changed in 2020, if you got to resentencing, you now had a prison prior that was no longer authorized by

5

law. And they could not be resentenced." "That prison prior at that point became nothing more than a historical footnote . . . ."

"There's no way either one of these prison priors could be imposed today." "As of 2020 [*Christianson*'s] claim, their fear that that prison prior could then actually be [imposed] is unfounded. Post 2020, any resentencing that would have to occur could not include a now-invalid prison prior. That means that that abstract that includes the stayed prison prior is nothing more than as I said before a footnote to history."

The court continued, "There is nothing—there's no difference between this person and a person who appropriately had their 667.5(b) prior stricken other than there's some ink on a page that gives note to history because someone who admitted the prison prior and it was appropriately stricken would not get" a full resentencing hearing. "And the condition precedent to resentencing is that the defendant is currently suffering a harm as a result of a 667.5(b) prior, and that harm is serving an additional sentence."

The People concurred with the court and this court's analysis in *Rhodius*: "They have the more robust cogent and accurate analysis of the statutory intent as well as the statutory construction. We think that imposed means imposed and executed. And that does harmonize the statute and [is] the only way to harmonize [section 1172.75, subdivision] (d)(1) specifically. And it also clarifies any ambiguity in serving time on that enhancement or judgment."

The court ruled that the defendant "was not serving time for a prison prior in a manner contemplated by the statute. And for that reason, I am denying relief under this

statute." The court struck the prior prison term enhancements: "They should be removed completely from the abstract of judgment." "I order an amended abstract of judgment that does not show prison priors at all." "I am ordering prepared an amended abstract of judgement. And I'm nunc pro tuncing the decision to [strike] because . . . we were directed to strike, not stay [the enhancements]."[5]

## II. DISCUSSION

Defendant contends this court should reverse and remand the matter with directions to the trial court to hold a full resentencing hearing. The People maintain we should affirm the trial court's order in reliance on *Rhodius*. We affirm with directions.

Senate Bill No. 483 (Senate Bill 483) (2021-2022 Reg. Sess.) added section 1171.14 to the Penal Code (Stats. 2021, ch. 728), which the Legislature subsequently renumbered, without substantive change, as section 1172.75 (Stats 2022, ch. 58, § 12, eff. June 30, 2022). (*Rhodius*, *supra*, 97 Cal.App.5th at p. 42, fn. 4.) "Section 1172.75, subdivision (a), states that '[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid.' [Citation.] Section 1172.75 instructs the CDCR to identify those persons in their custody currently serving a term for a judgment that includes an enhancement under section 667.5(b) (excluding sexually violent offenses) and provide such information to the sentencing court that imposed the enhancement. [Citation.] Subsequently, the

---

[5] The court in this case did not strike the prior prison term enhancements in any manner, let alone nunc pro tunc.

sentencing court 'shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a).' [Citation.] 'If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant.' [Citation.]" (*Id.* at p. 42.)

"Whether section 1172.75 entitles [defendant]—who is currently serving time on an abstract of judgment that includes a stayed but now invalid section 667.5, subdivision (b) enhancement—to a full resentencing is a question of law that we review de novo, under well-settled standards of statutory interpretation. [Citations.]" (*Christianson*, *supra*, 97 Cal.App.5th at p. 308.)

"Section 1172.75[,] subdivision (d)(1)'s requirement that the resentencing shall result in a lesser sentence than the one originally imposed necessitates the conclusion that the repealed enhancement increased the length of the sentence. The only way for the repealed enhancement to have increased the length of a sentence is for the enhancement to have been imposed and executed. If the repealed enhancement was imposed and stayed, the sentence would not have been increased, as was the case here. To interpret 'imposed' as used in section 1172.75, subdivision (a), to include when a sentence was 'imposed and stayed' would require any sentencing court faced with an 'imposed and stayed' enhancement to arbitrarily lower a sentence simply because the judgment contained a stayed enhancement." (*Rhodius*, *supra*, 97 Cal.App.5th at pp. 43-44; but see *People v. Espino* (2024) 104 Cal.App.5th 188, 203, review granted Oct. 23, 2024,

8

S286987, (dis. opn. of Lie, J.) ["So the concept of a sentence enhancement being 'imposed' when its punishment was stricken is not one I claim to comprehend."]; contra, *Renteria*, *supra*, 96 Cal.App.5th at pp. 1282-1283 [Defendant entitled to full resentencing hearing where section 667.5 enhancement was imposed and stayed]; accord, *Christianson*, *supra*, 97 Cal.App.5th at p. 316, fn. 8; accord, *Saldana*, *supra*, 97 Cal.App.5th at p. 1278; accord, *People v. Mayberry* (2024) 102 Cal.App.5th 665, 674, review granted Aug. 14, 2024, S285853; see *People v. Gray* (2024) 101 Cal.App.5th 148, 167 & fn. 14 ["Other courts to have considered this question have focused on the meaning of the term 'imposed,' and have disagreed with *Rhodius*."].)

Here, like in *Rhodius*, the trial court stayed punishment on all four prior prison term enhancements.[6] (*Bowman*, *supra*, E029174.) Thus, since defendant was not serving a term of imprisonment that included a prior prison term enhancement and striking or vacating the enhancement would not result in a lesser sentence than the one originally imposed as required by section 1172.75, subdivision (d)(1), the court properly denied defendant's request for a full resentencing hearing. (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant effectively argues that we are not bound by *Rhodius*. However, "Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division." (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9; but see Cal. Rules of Court, rule

---

[6] Although the court appears to have later stricken two of the enhancements.

9

8.1115(e)(1) ["Pending review and filing of the Supreme Court's opinion . . . a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potentially persuasive value only."].) *Rhodius* is a decision of this appellate division.

Nonetheless, defendant essentially argues that the majority view of the appellate courts set forth in *Renteria*, *Christianson*, and *Saldana*, comprise a compelling reason to depart from this court's decision in *Rhodius*. We disagree.

In analyzing the legislative history of Senate Bill 483, this court in *Rhodius* observed that the Legislature was primarily concerned with providing relief to those who had served time on rulings deemed unfair, on separating inmates from their families, and on the costs to the state of incarceration. (*Rhodius*, *supra*, 97 Cal.App.5th at pp. 46-48.) "The findings, costs, and ramifications of . . . Senate Bill 483 cited during the legislative sessions presuppose inmates who are serving additional time as a result of the sentencing enhancement under section 667.5[, subdivision] (b). The references to financial and familial burdens do not logically follow if a defendant is not actually serving additional time as the result of an imposed and executed sentence associated with a section 667.5[, subdivision] (b) prior. As such, to interpret the statute to include enhancements that were imposed and stayed would be contrary to the legislative intent and the plain language of the statute." (*Id.* at pp. 48-49.)

Here, since the court did not impose and execute sentence on the prior prison term enhancements, striking or vacating them as anything other than an administrative

10

function would not promote the legislative concerns in passing Senate Bill 483; in other words, because defendant was not serving time on the enhancements, striking them would not provide a lessened term for defendant, would not enable him to reunify with his family, and would not result in any cost savings to the state. We continue to agree with this court's decision in *Rhodius* and disagree with the courts in *Renteria*, *Christianson*, *Saldana*, *Mayberry*, *and Espino*.

Moreover, as the court below noted, *Christianson* inaccurately reasoned that a stayed prior prison term enhancement should be considered imposed because "the trial court retains the ability to lift the stay and impose the term under certain circumstance, such as if an alternately imposed term is invalidated." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312.) Contrary to *Christianson*'s assertion, a stayed or stricken prior prison term enhancement could not now ever subsequently be imposed because the Legislature invalidated the imposition of punishment on the enhancement unless it is for a qualifying sexually violent offense. (*People v. Mayberry*, *supra*, 102 Cal.App.5th at p. 676 ["It is clear from the plain language of subdivision (a) of section 1172.75 that the Legislature rendered sentence enhancements imposed pursuant to former subdivision (b) of section 667.5 legally invalid, except where imposed for a qualifying sexually violent offense."]; *People v. Espino*, *supra*, 104 Cal.App.5th at p. 204 (dis. opn. of Lie, J.) ["[E]ven if a now-invalid enhancement under former section 667.5(b) could be said to possess some unidentified potential to affect a future sentence or trigger another collateral consequence of some kind, this would be beyond the ambit of Senate Bill No. 483." ].)

11

Here, like in *Christianson*, the underlying convictions upon which defendant's prior prison term enhancements were based were not for sexually violent offenses. (*Christianson*, *supra*, 97 Cal.App.5th at p. 311.) Thus, punishment on the enhancements here could never be legally imposed in the future.

Furthermore, as the court below also noted, to interpret the law to allow a full resentencing hearing for a person who was "lucky" enough to only have punishment on his enhancement stayed or stricken but not to someone who was "unfortunate" enough to have his enhancement completely stricken strains credulity. (*People v. Hardin* (2024) 15 Cal.5th 834, 847 ["'[T]he requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' [Citation.]".) In these circumstances, we see no functional difference between striking the punishment, staying the punishment, or striking the enhancement in its entirety. Therefore, the court properly denied defendant's request for a full resentencing hearing.[7]

---

[7] As the court below in Archuleta noted, a trial court may either impose or strike sentence on a prior prison term enhancement, any other sentence is unauthorized. (See *People v. Langston* (2004) 33 Cal.4th 1237, 1241 ["Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken"]; *Saldana*, *supra*, 97 Cal.App.5th at p. 1275; *People v. Thomas* (2013) 214 Cal.App.4th 636, 640 ["Generally, the failure to impose a mandatory enhancement or strike it . . . is a jurisdictional error . . . ."].) "If a judge strikes the enhancement, it's as if the fact of the enhancement never existed—it will not remain on the defendant's criminal record nor will it affect them in any potential future sentencing." (*People v. Flores* (2021) 63 Cal.App.5th 368, 383.) The problem in part is the use of the word "strike." It would be more precise and in keeping with the language in California Supreme Court opinions to state that the enhancement is "vacated." (See, e.g., *People v. Morelos* (2022) 13 Cal.5th 722, 770.) If the enhancement itself is vacated, it should not appear on the abstract of judgment.

*[footnote continued on next page]*

### III.  DISPOSITION

The trial court is directed to strike or vacate the section 667.5, subdivision (b) enhancements in their entirety.  The court is further directed to issue a new minute order and abstract of judgment reflecting the court's order.  The court is directed to forward a copy of the new minute order and abstract of judgment to the CDCR.  The court's order is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____<br>Acting P. J.

I concur:

CODRINGTON_____<br>             J.

---

Here, the court neglected to strike the enhancements.  There is no new abstract of judgment in the record.  Thus, we shall direct the court below to strike or vacate the enhancements in their entirety but not nunc pro tunc as the court did in Archuleta.

[*People v. Bowman*, E083016]

RAPHAEL, J., dissenting.

Penal Code section 1172.75, subdivision (a)[1] declares legally invalid prison prior enhancements that were "imposed" before 2020. If a defendant has such an enhancement, the sentence is to be recalled and the defendant resentenced under current laws, which may be more lenient than those used originally.

Other section 1172.75 subdivisions tell us that an enhancement is "imposed" under subdivision (a) when the defendant has a "judgment that includes" such an enhancement. (§ 1172.75, subd. (b); see *id*. subd. (c) ["judgment includes an enhancement described in subdivision (a)"].)

Despite that statutory text, the majority concludes that "imposed" in subdivision (a) means "imposed and executed." (Maj. opn., *ante*, at p. 6.) Consequently, because Norma Maria Bowman's prison prior enhancements were "imposed and stayed," the majority denies her the resentencing that she would receive if they were executed.

The majority's textual basis for its conclusion is a single phrase in the resentencing provision, subdivision (d)(1), which requires a "lesser sentence" upon resentencing. (Maj. opn., *ante*, at p. 8.) As described in Section I, below, the whole statute's text shows that "imposed" encompasses any qualifying prison priors that were imposed, regardless of whether their punishment was stayed. The section explains why the term "lesser sentence," if anything, undermines the majority's view.

---

[1] Undesignated statutory citations in this dissent refer to the Penal Code.

1

The majority, moreover, does not even allude to the express purpose of section 1172.75's resentencing provisions: to apply *other* new sentencing laws to eliminate disparities and promote uniformity. Creating a disparity with those granted this benefit, the majority denies Bowman resentencing for the sole reason that her sentencing judge stayed the punishment on her enhancement. Today's opinion thereby undermines the purposes articulated in the statute.

We need not rely on legislative history, but section II below will explain how the majority misapprehends the legislative intent by omitting the history of the resentencing provisions from its consideration of the statute's history. Section III below will explain that the majority's disposition, directing the trial court to strike Bowman's enhancements, lacks authority. The Legislature has authorized recall and resentencing, not striking enhancements.

I

Legislation effective in 2020 prospectively abolished most prior prison enhancements that had been imposed under section 667.5, subdivision (b). (Senate Bill No. 136 (2019-2020 Reg. Sess.); Stats 2019, ch. 590.) Our Legislature made that abolition retroactive in 2022, through Senate Bill No. 483 ((2021-2022 Reg. Sess.); Stats 2021, ch. 728), which enacted section 1171.1, later re-numbered as section 1172.75.

The first subdivision of this section contains the word "imposed" at issue here. It declares invalid almost any prior prison enhancement that had been imposed before the enhancements were abolished. That subdivision contains just one exception, for

defendants convicted of sexually violent offenses.  It states: "[a]ny sentence enhancement that was *imposed* prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid."  (§ 1172.75, subd. (a) [italics added].)

Subdivision (a) contains no exception for enhancements that were imposed and stayed.  (§ 1172.75, subd. (a).)  When we interpret a statute, we are to start with the usual and ordinary meaning of its terms in the statutory context.  (E.g., *Make UC a Good Neighbor v. Regents of the University of California* (2024) 16 Cal.5th 43, 55.)  Ordinarily, an enhancement placed in a judgment is described as "imposed" even if the punishment is stayed.  (See, e.g., Maj. opn., *ante*, at p. 8 [quoting caselaw describing enhancements like Bowman's as "imposed and stayed"]; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1163 [describing prior serious felony enhancement as "imposed and stayed"].)  Considering the ordinary language of subdivision (a) alone, there is no reason to read into it an exclusion that the Legislature could have added but did not.  (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 676 ["plain language" of subdivision (a) includes imposed and stayed enhancements], review granted Aug. 14, 2024, S285853.)

The Legislature *could* use "imposed" as an abbreviated way to communicate "imposed and executed," so the majority is at least correct that our interpretation need not stop at subdivision (a) alone.  (§ 1172.75, subd. (a).)  Analyzing a different statute, our Supreme Court found "the word 'impose' . . . must be interpreted as shorthand for 'impose and then execute' to make sense."  (*People v. Gonzalez* (2008) 43 Cal.4th 1118,

3

1127.)  Here, though, the rest of section 1172.75 shows that we need not read the word as shorthand for the statute to "make sense."  Indeed, in *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1282 (*Renteria*), almost two years after the statute was enacted, even the People conceded that the law "squarely applies" to "imposed and stayed" enhancements.  The People's view of the ordinary meaning, well after heavy litigation on the statute had begun, indicates that the shorthand interpretation is unnecessary for the statute to "make sense."

The rest of section 1172.75 provides various reasons to conclude that we should not read into subdivision (a) an exclusion for "imposed and stayed" enhancements.

A.  *Subdivision (b)*

Subdivision (b) of section 1172.75 charges prison administrators with identifying judgments that include the enhancements declared invalid in subdivision (a).  It requires the "Secretary of the Department of Corrections and Rehabilitation [CDCR] and the county correctional administrator of each county" to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)" and to provide certain information about those people "to the sentencing court that imposed the enhancement."  (§ 1172.75, subd. (b).)

The subdivision contains no suggestion that prison administrators exclude enhancements imposed and stayed.  A drafter of subdivision (b) could not expect that prison officials, charged with finding enhancements described in subdivision (a), would construe "imposed" using inferences gleaned, without any express direction to do so,

4

from subsequent provisions of the statute, as the majority proposes.  (§ 1172.75, subds. (a), (b).)  The natural reading of subdivision (b) applies the interpretation the Attorney General had in *Renteria*, *supra*, 96 Cal.App.5th at p. 1282; that is, that subdivision (a) includes all imposed prison prior enhancements.

In fact, when drafting and voting on the statute, the Legislature was aware that CDCR had identified the individuals with enhancements imposed, at least as a group, when subdivision (a) was in the statute but none of the resentencing provisions yet were.  CDCR informed the Assembly Public Safety Committee that it had identified 10,133 inmates.  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended July 7, 2021, pp. 3-4.)  We know, from this case and many others, that CDCR identified defendants whose enhancements were "imposed" but also stayed, so we have every reason to presume that CDCR was including defendants like Bowman all along.  Thus, CDCR appears to have done exactly what a drafter or reader of the text would have expected it to do.

Subdivision (b), for these reasons, supports interpreting "imposed" in subdivision (a) to mean "imposed."  (§ 1172.75, subds. (a), (b).)  A statute that excluded "imposed and stayed" enhancements would provide clearer instructions to CDCR to exclude them.

B.  *Subdivision (c)*

Subdivision (c) of section 1172.75 instructs trial courts on what to do with the information from prison administrators.  The court is required to "verify" that the "current" judgment includes a sentencing enhancement described in subdivision (a).

5

(§ 1172.75, subd. (c).)  This means that the court is to check to ensure that the enhancement remains in the operative judgment.

The use of the verb "verify" suggests that the court is to confirm the judgment on its face falls within subdivision (a), rather than exercise judicial discretion to evaluate it. "Verifying" typically refers to confirming truth using external information, not analyzing something afresh.  (See, e.g., *Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC* (W.D. Wash. 2016) 173 F.Supp.3d 1085, 1108 [defining "verify" as "'to confirm the truth or truthfulness of. . .to confirm or establish the authenticity or existence of'"].)  The use of the adjective "current" suggests that the court's verifying task is to ensure the enhancement imposed in the judgment identified by CDCR has not been vacated, such as on direct appeal.

The task of *verifying* that the *current* judgment includes the enhancement suggests that CDCR has performed a ministerial task of finding judgments with the enhancements. It also suggests that the court's task is to confirm that the enhancement is still in the current judgment.  This reading makes sense because, before the legislation was enacted, CDCR told the Legislature that it had identified the inmates (10,133 of them) whose judgments included the now-invalid enhancement.  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, pp. 3-4.)  As this was no obstacle for CDCR, it would leave the court's task to verify that, between the time that CDCR provides the judgments and the petitioner's hearing, the enhancement had not already been eliminated from the current judgment.  This is an ordinary meaning of the

6

combination of "verify" and "current": to confirm that previously provided information is unchanged. (Cf. Welf. & Inst. Code, § 12304.41 ["verify" entity's "current" mailing address and update if needed]; Bus. & Prof. Code, § 7599.39 [licensee to "verify" proof of "current" registration].)

Subdivision (c) contains no suggestion that the court is supposed to exclude imposed enhancements for any reason not stated in subdivision (a). (§ 1172.75, subds. (c), (a).) On the contrary, the trial court must confirm that the judgment "includes a sentencing enhancement described in subdivision (a)" (§ 1172.75, subd. (c)), the provision that describes prison priors "imposed" without indicating that stayed enhancements are excluded.

Once a trial court determines the current judgment "includes an enhancement" described in subdivision (a), "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) At that stage, "section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) The statute thereby provides the entire process resulting in a mandatory resentencing without suggesting that the term "imposed" excludes "imposed and stayed."

C. *Subdivision (d)(1)*

In subdivision (d)(1), the Legislature required that the resentencing must result in a "lesser" sentence than the one originally imposed. (§ 1172.75, subd. (d)(1).) That description of a "lesser" sentence includes one where nothing changed from the original

7

sentence but the elimination of an enhancement with a stayed prison term. Such a sentence is neither a "greater" sentence nor the "same" sentence earlier imposed. Rather, a sentence with an invalid enhancement eliminated is a lesser one than a sentence with one included. (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1156 [a sentence is a "lesser sentence" when there are fewer components to it, even if no "on the ground change"].)

The Legislature did not require that the court impose a "shorter" prison term than before. This choice of "lesser" rather than "shorter" appears deliberate. Subdivision (d)(1) also states that the court may not impose a "longer" sentence than the original one. (§ 1172.75, subd. (d)(1).) Though it forbade a *longer* sentence, the Legislature did not require a *shorter* one.

When the Assembly Committee on Public Safety added the "lesser" language to the statute in a July 15, 2021, amendment, it had a reason to use that word. It had been informed that thousands of sentences would be rendered "lesser" but not necessarily "shorter" with the elimination of an invalid enhancement. CDCR had reported that 3,061 inmates with a prison prior were serving an indeterminate sentence (that is, a life sentence), such as Bowman's sentence in this case. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, p. 4.) The report explained that for these persons to be released they "would still be required to have a parole suitability hearing before the Board of Parole Hearings." (*Ibid.*) When CDCR provided the report, the "imposed" language in subdivision (a) had been in the draft

8

statute for several months, since March 3, 2021. CDCR had no different standard for what enhancements the statute covered, other than that they were "imposed."

The Legislature thereby learned that when courts eliminate prison priors from the judgment of any of over 3,000 defendants with indeterminate sentences, that action would not make a shorter sentence. Even if a component of such a defendant's determinate sentence (or minimum custody time on their life sentence) is reduced, the defendant stays in custody for life unless they—separately—qualify for release on parole. (See, e.g., *People v. Dowdy* (2024) 107 Cal.App.5th 1, 5-6 [prison priors imposed run consecutive to 25-years-to-life sentence].) Such a defendant might, on a section 1172.75 resentencing, receive a shorter sentence for reasons *other* than the elimination of the enhancement.

Told that CDCR had identified 3,061 inmates with indeterminate sentences to whom section 1172.75 would apply, the Legislature did not narrow the statute to exclude them. These inmates qualify to have their enhancements eliminated and to be resentenced. The Legislature chose to eliminate these legally invalid enhancements even if doing so would not mean a shorter sentence for the inmate. The use of "lesser" in the statute accords with that. The Legislature's treatment of indeterminate sentences and its use of the term "lesser" (rather than "shorter") support concluding that section 1172.75 applies to "imposed and stayed" enhancements, a similar situation where the elimination of the enhancement would not itself mean a shorter sentence.

9

The majority (maj. opn., *ante*, at pp. 7-11) follows *People v. Rhodius* (2023) 97 Cal.App.5th 38, 44, review granted, Feb. 21, 2024, S283169, and interprets the requirement that the resentencing must "result in a lesser sentence" as meaning that an enhancement is imposed under subdivision (a) only if "the repealed enhancement increased the length of the sentence." Otherwise, *Rhodius* concluded, a resentencing court would have to "arbitrarily lower" the sentence, because the elimination of the enhancement would not itself do that. (*Ibid.*)

This view would be better supported had the Legislature required a "shorter" sentence. The Legislature did not do so, even though it prohibited "longer" sentences. The view also does not square with the Legislature's consideration of enhancements to indeterminate sentences that do not "increase[] the length of the sentence" (*Rhodius*, supra, 97 Cal.App.5th at p. 44) because those defendants are subject to a life sentence no matter whether the enhancement was imposed and no matter whether it is eliminated. The *Rhodius* view seems to require that defendants with indeterminate sentences (as Bowman does here) not receive section 1172.75 relief even if their enhancement was imposed and executed, because such an enhancement does not increase their sentence length. But the Legislature was told that CDCR had identified these defendants for relief, and the legislative history suggests no intent to exclude them. If anything, the distinctive term "lesser" contradicts the majority's view: it helps show the statute includes defendants with indeterminate sentences and defendants with stayed enhancements. For each, simply eliminating the enhancement is a lesser sentence but not a shorter one.

10

Subdivision (f) of section 1172.75 refutes the majority's view even more directly. Beginning January 1, 2025, that subdivision renders ineligible for recall and resentencing sexually violent offenders who have a sentence of death or of a life term without the possibility of parole (LWOP). That exclusion reflects the assumption that section 1172.75 resentencing applies to defendants with death or LWOP sentences, so long as the crime is not a sexually violent offense. In such cases, any imprisonment on the prison prior does not increase the length of the sentence. With or without the enhancement, these defendants cannot be released at all. The enhancements nevertheless qualify a defendant for recall and resentencing. This demonstrates that the statute contemplates that enhancements are "imposed" under subdivision (a) when they are included in the judgment, not only where "the repealed enhancement increased the length of the sentence." (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44.)

D. *Subdivisions (d)(2), (d)(3), and (d)(4)*

The majority correctly recognizes that a preeminent goal of the Legislature in enacting section 1172.75 was to eliminate prison prior enhancements such that inmates do not serve custody time on them. (Maj. opn, *ante*, at p. 11.) That statutory purpose is satisfied because any interpretation of "imposed" includes all defendants with "imposed and executed" enhancements.

But the Legislature did not simply *eliminate* the enhancements by ordering them struck. Rather, it required the court to "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) The Legislature ordered the resentencing of inmates based on

11

current sentencing rules and "any other changes in law that reduce sentences or provide for judicial discretion." (§ 1172.75, subd. (d)(2).) The Legislature expressly stated its purpose: "to eliminate disparity of sentences and to promote uniformity of sentencing." (*Ibid.*) In recent years, there have been an array of ameliorative sentencing measures, and the inmates receive the benefits of any of them at the resentencing. (See *People v. Christianson* (2023) 97 Cal.App.5th 300, 314 [section 1172.75 "involves statutory amendments expressly aimed at *reducing* sentences" and requires a full resentencing "in light of all associated sentencing reform"], review granted Feb. 21, 2024, S283189.)

To that end, the Legislature specified that a defendant could obtain a lesser sentence based on "postconviction factors." (§ 1172.75, subd. (d)(3).) At the resentencing, the inmate can benefit from their "disciplinary record and record of rehabilitation"; evidence that "age, time served, and diminished physical condition, if any, have reduced [their] risk for future violence"; and evidence that "circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).) For the resentencing, the court placed a presumption, like that it placed in section 1170, subdivision (b)(2), that the sentence will not exceed the middle term absent facts in aggravation that the inmate has admitted or that have been proved in court beyond a reasonable doubt. (§ 1172.75, subd. (d)(4).)

These resentencing goals apply just as well to those with *stayed* punishment on their enhancements as they apply to those with *executed* punishment. In fact, if we

12

exclude those inmates with stayed punishment from section 1172.75 relief, we create more sentencing disparities, not fewer.[2]

The disparity the majority's view creates may be more discernible if one considers this case as an example. Bowman is about 64 years old and has been in custody since 2000, serving her sentence of 35 years to life for burglary. Her sentence on the principal count (25 years to life) was increased by ten years due to two mandatory "nickel priors" (§ 667, subd. (a)(1)) that enhanced her imprisonment due to other burglary convictions in 1985 and 1990. Effective in 2019, however, a change in law "granted trial courts the discretion to strike or dismiss the previously mandatory five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1)." (*People v. Ellis* (2019) 43 Cal.App.5th 925, 928.) If Bowman received a resentencing, she would have a chance to ask the judge to dismiss one or both nickel priors in the furtherance of justice. (See § 1385, subd. (a).) Under section 1172.75, subdivision (d)(3), she might rely on her conduct during her quarter-century in custody, her age, and other post-sentencing factors to argue that she should be allowed to seek parole after 25 or 30 custody years, rather than after 35.

---

[2] Section 1172.75, however interpreted, leaves disparities, as inmates who received no prison prior enhancement at all do not receive a resentencing. Yet the Legislature wished to eliminate disparities between the sentences of those sentenced under old laws and those sentenced today. Including more (rather than fewer) inmates for resentencing serves that goal. And the majority's interpretation creates additional disparities among the class of inmates with a prison prior, sorting them for the resentencing benefit based on whether their punishment was executed.

13

Yet under the majority's view, Bowman is denied a resentencing solely because her trial court stayed the one-year punishment on her prison priors. If the trial court had executed punishment on one of those enhancements, not only would that punishment be removed today, but Bowman would have a chance to argue that the trial court should vacate the nickel priors as well. An inmate much like Bowman but who the sentencing judge thought deserved *more* punishment—and thus refused to stay a prison prior— would today have a chance to seek the more lenient sentence simply because their prison prior enhancement was executed. This is not the uniformity in sentencing that section 1172.75, subdivision (d)(2) seeks. The majority's interpretation of section 1172.75 contradicts the statute's express purposes.

Every inmate with an "imposed and executed" prison prior receives relief under section 1172.75, accomplishing the legislative policy of ensuring inmates do not serve time on prison priors. But the legislative policy of allowing a resentencing in section 1172.75, subdivisions (d)(2), (d)(3), and (d)(4) applies equally to those with "imposed and executed" and "imposed and stayed" prison priors. We undermine the uniform sentencing goal of the statute if we deny resentencing to those with punishment stayed on their enhancement.[3]

---

[3] The Legislature recently again endorsed resentencings in this context. Effective at the beginning of 2025, a new section 1171 states that a trial court "has jurisdiction to modify every aspect of the defendant's sentence" in a postconviction petition such as this one, so long as there is no more specific rule prohibiting doing so. (§ 1171, subd. (c) & (c)(2); see Assembly Bill No. 2483 (Stats. 2024, ch. 964, § 2, eff. Jan. 1, 2025).)

14

II

As discussed in Section I, the word "imposed" in subdivision (a), read either alone or with the whole statute, is best interpreted as including both "imposed and executed" and "imposed and stayed" enhancements.  The majority relies on a single statutory term—"lesser" sentence—that does not advance its argument that "imposed" is shorthand for "imposed and executed."  Rather, the text conveys that all defendants with prison priors imposed in their judgment are to have their sentence recalled and be resentenced.

Given the statutory text, we need not further parse section 1172.75's legislative history.  Even so, because the majority asserts that the legislative intent conflicts with interpreting section 1172.75 to include "imposed and stayed" enhancements (maj. opn., *ante*, at p. 10), I will address the legislative history.

Effective January 1, 2020, the Legislature established the Committee on Revision of the Penal Code to study that Code and propose reforms.  (Government Code §§ 8280, 8290.5.)  Its first set of recommendations, published February 9, 2021, contained two recommendations that became part of section 1172.75.[4]  The first recommendation was to strike the prison prior enhancements retroactively.  The second was to establish a judicial process for "second look" resentencing, the Model Penal Code's term for revisiting inmates' entire sentences (Committee on Revision of Penal Code, Annual Report and Recommendations, *supra*, at p. 68).  Each proposal became a different bill.

---

[4]  Committee on Revision of Penal Code, Annual Report and Recommendations, (Feb. 9, 2021) <https://perma.cc/TG5N-XNGL>, pages 48-51, 64-68.

15

First, on March 3, 2021, Senate Bill No. 483 was introduced to implement the recommendation about prison prior enhancements.[5] The first version of Senate Bill No. 483 strictly followed the committee recommendation and had no resentencing provision. Rather, the statute's subdivision (c) directed courts to "administratively amend the abstract of judgment to delete that enhancement." The proposal had no subdivision (d), as would the final bill. There was no "lesser sentence" requirement, and courts had no authorization to consider other changes in law. The initial bill analysis quotes the bill's author as stating that Senate Bill No. 483 is eliminating the enhancements "[a]s recommended by the state's Committee on Revision of the Penal Code." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, hearing Apr. 27, 2021 for version Mar. 3, 2021, p. 2.)

Meanwhile, on March 11, 2021, Assembly Bill No. 1540 (Assem. Bill No. 1540) was introduced in the Assembly Committee on Public Safety to implement the "second look" recommendation for defendants who law enforcement suggested for recall and resentencing. The introduced version of Assem. Bill No. 1540 contained resentencing provisions like those that the same committee would, four months later, import into Senate Bill No. 483. In its proposed section 1170.03 (later adopted and then renumbered as section 1172.1), Assem. Bill No. 1540 proposed resentencing to "eliminate disparity of sentences and to promote uniformity of resentencing," and it contained a description of

---

[5] The substance of Senate Bill No. 483 was offered as an amendment replacing unrelated text of an existing bill. The same occurred with Assembly Bill No. 1540 discussed next.

the post-conviction factors that a court may consider. (Proposed § 1170.03, subds. (a)(2), (a)(4).) The committee's analysis of the bill discussed the Committee on Revision of the Penal Code's "second look" resentencing recommendations and stated that "[t]his bill is a response to the Committee's recommendations on resentencing." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1540, as amended April 22, 2021, pp. 5-6.)

Senate Bill No. 483—the prison prior bill—passed the Senate and proceeded to the Assembly Committee on Public Safety. There, an important change occurred. That committee amended the bill to eliminate the "administrative" striking of enhancements and replaced it with the recall and resentencing provisions now found in section 1172.75, subdivision (d). (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 483, as amended July 7, 2021, pp. 1-2 [explaining resentencing provisions].) The committee adapted those provisions from Assem. Bill No. 1540, the "second look" resentencing bill. A staff member from the Committee on Revision of the Penal Code testified before the Assembly Committee on Public Safety in support of the amended bill on July 13, 2021, stating that "as amended by the committee, it will ensure that fair sentencing hearings are held when necessary" and "it will promote justice, rationality, uniformity in sentencing."[6] At that point, Senate Bill No. 483 no longer was about only eliminating enhancements; it was also about the resentencing goals in the "second look" resentencing recommendation.

The Legislature enacted both Senate Bill No. 483 and Assem. Bill No. 1540, providing similar resentencing provisions in each. Both current section 1172.75,

_____

[6] https://www.assembly.ca.gov/media/assembly-public-safety-committee-20210713 [testimony of Natasha Minsker beginning at approximately 2:19:00].)

17

subdivision (d)(2) and section 1172.1, subdivision (a)(2) instruct courts to apply "changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." Both current section 1172.75, subdivision (d)(3) and section 1172.1, subdivision (a)(5) allow courts to consider "postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

This legislative history, then, confirms that section 1172.75 reflects not just the purpose of eliminating one-year prison prior enhancements (one proposal of the Committee on Revision of the Penal Code) but also the purpose of revisiting the sentences of persons sentenced under other laws that have been changed, or where post-conviction factors might make a difference (the separate "second look" proposal).

*Rhodius*, however, relied on only a single piece of legislative history: a March 3, 2021, report from the Senate Public Works Committee, discussing the initial version of Senate Bill No. 483. (See *Rhodius*, *supra*, 97 Cal.App.5th at pp. 46-48.) At that point, the draft statute contained no resentencing provisions and required courts simply to delete prison prior enhancements. That legislative history does not relate to the Assembly's July 2021 decision to amend the statute to require recall and resentencing and to authorize courts to consider other changes in law and post-conviction conduct by creating

18

subdivision (d). *Rhodius*, and today's opinion, address only legislative history that pre-dates the existence of that subdivision.

This history of section 1172.75 provides another reason why "imposed" means what the text states it does: a prison prior included in the judgment. By providing for recall and resentencing while eschewing the proposal to simply strike the enhancements, the Legislature's intent was—as in section 1172.1—to allow deserving defendants to benefit from resentencing, and there is no reason why those with "imposed and stayed" enhancements are less likely to benefit than those with "imposed and executed" ones.

III

One final item: the majority directs the trial court to strike or vacate the prison prior enhancements. (Maj. opn., ante, at pp. 11-13.) There is no authority for that.

These enhancements were not retroactively invalidated until the Legislature declared them invalid in section 1172.75, subdivision (a). The only authority for doing so is section 1172.75. If they do not fall under section 1172.75, then there is no authority for addressing them. If they fall under section 1172.75, then there also is no authority to "strike" them, as the statute requires that the court "shall recall the sentence and resentence the defendant," not strike the enhancements. (§ 1172.75, subd. (c).)

19

The majority's rationale for ordering the enhancements struck is that they cannot be imposed in the future. (Maj. opn., *ante*, at pp. 11-12.) It is true that they cannot. But the point of an "imposed and stayed" enhancement is that the sentence need not be imposed again; rather, the court can lift the stay if another enhancement is reversed or vacated. (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129-1130 [various firearms enhancements are to be "imposed and stayed" so if the executed one is found invalid on appeal, the others are "*readily* available"]; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 ["if the unstayed sentence is reversed, a valid sentence remains extant"]; *People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1553 ["When the principal term was reversed, the stay was removed and the full middle term became the sentence"].) Practically, there is no chance that Bowman's stays would ever be removed. But the majority's approach is wrong in principle, as it orders a court to strike a stayed sentence absent a law providing authority to do so. While it makes eminent sense to eliminate Bowman's prison prior enhancements, the statutory way to do so is what the Legislature authorized in section 1172.75, subdivision (c): recalling her sentence and resentencing her.

If Bowman had an *executed* prison prior enhancement in her judgment along with her life sentence, the majority presumably would follow the statutory procedure and order a recall and resentencing. The Legislature enacted that procedure in section 1172.75, rejecting the initially proposed procedure of striking enhancements that the majority applies to Bowman's case. I am dissenting because I would follow the terms of the

20

statute.  Doing so is also more consistent with the statutory purpose of seeking uniform sentencing under current laws.  Under section 1172.75, all those with a prison prior enhancement included in their judgment qualify for recall and resentencing.

RAPHAEL
J.